Condon, J.
Plaintiff brought replevin against the defendant on June 26, 1947 to recover a 1942 Pontiac sedan which plaintiff claimed to have bought on June 19, 1947 from John DeMarino. Defendant filed pleas of non cepit, non detinet and also title by purchase on June 20, 1947 from William Miller in whose name the sedan was registered and who had in his possession at that time a bill of sale from DeMarino and also a bill of sale from Atlas Motor Sales to DeMarino. After the conclusion of the evidence in the trial of the action in the superior court the trial justice granted the plaintiff’s motion for a directed verdict.
Defendant excepted to that ruling and has brought the case here for our determination solely on such exception. He contends thereunder that taking into consideration the inferences which the jury might reasonably draw from the evidence there was a conflict whether title to the sedan passed on June 19, 1947 to the plaintiff or to Miller. And he argues further that even if title passed to the plaintiff the unusual circumstances surrounding the transaction *371 taken in connection with the physical possession of the sedan by Miller thereafter raised a question for the jury as to whether plaintiff’s conduct in the circumstances should estop him from asserting his title against the defendant. In reply to those contentions plaintiff urges that the evidence of his prior title is uncontradicted and further that there is no basis therein for submitting to the jury the question of estoppel.
It appears from the evidence that plaintiff operated the Maple Hotel in Providence; that William Miller was a guest there in June 1947 for about a week or ten days; and that during such period plaintiff had seen and talked to him three times. Beyond that he was a total stranger to the plaintiff. When he registered he gave Paterson, New Jersey, as his home. Plaintiff testified that he had never before met Miller and knew him only as a guest. Nevertheless on June 19, 1947, if his testimony is credible, he seems to have placed implicit trust in Miller in the purchase of the Pontiac which is the subject of the instant litigation. On that day Miller met DeMarino who had advertised his Pontiac for sale and arranged to purchase it for $1000. He did not say he was acting for anyone else and when DeMarino agreed to sell he thought he was selling to Miller. Nor was there any talk about Miller getting a commission on the sale.
The negotiations for the sale took place at DeMarino’s home but it was consummated in plaintiff’s office in the Maple Hotel. DeMarino had driven the car there and at first had waited outside while Miller went in the hotel. He came out a short time later accompanied by the plaintiff. According to DeMarino, the plaintiff merely stood on the sidewalk, looked at the car and went back in the hotel. He did not look into the car or ask to have the motor started or examine it in any other way. Miller and DeMarino followed him to his office in the hotel. There Miller wrote out in his own hand a brief informal bill of sale of the car and DeMarino signed it and left it on the *372 desk at which Miller was sitting. DeMarino did not hand* it to the plaintiff nor did he ask for it. He also testified that Miller did not read it aloud to the plaintiff.
Miller wrote out a check for $1000, plaintiff signed it, tore it out of the checkbook and handed it to DeMarino, who then placed on the desk a bill of sale of the Pontiac which he had received from Atlas Motor Sales when he bought the car from them. Plaintiff testified that DeMarino handed the bill of sale to him. Miller then filled in the transfer on the back of DeMarino’s registration certificate and the latter signed it. The evidence is not clear as to what DeMarino did with the registration certificate afterward, but apparently Miller got possession of it. At one point in his cross-examination plaintiff said: “I got the registration and bill of sale * * *.” It is in evidence as an exhibit but comes from the records of the state registry of motor vehicles which show that it was filed there on September 13, 1947. Who filed it does not appear, although according to printed instructions it is supposed to be filed by the transferror. The transfer form on the back reads in part as follows:
“If this vehicle is disposed of, proceed as follows: 1. Remove plate immediately. 2. Pill in statement below. If vehicle is sold or traded in, return registration card. * * * 6. If you dispose of this vehicle and do not wish to register another, return plate together with card properly endorsed in order that same may be cancelled.
()Stored
Check whether: ()Sold () Junked ()Destroyed () Stolen If Sold
to Whom Hyman Kshonsky Wm Miller
City or
Address 464 Westminster St Post Office Providence
State R. I.
Date of Signature
Sale Sept 5-47 of Registrant John De Marino”
The bill of sale which was written out by Miller in *373 the office was introduced by plaintiff and reads as follows:
“Maple Hotel 464 Westminster Street Providence 3, R. I.
MAnning 3508 Sold to Hyman Kshonsky of 464 Westminster St one 1942 Pontiac Sedan Motor #P8KA10508 Selling price $1,000 Paid in full. This car is free & clear of all encumbrances.
(signed) John De Marino”
After the above papers had been executed DeMarino went out to take his number plates off the car. Miller, however, came out as he was doing so and asked him to leave them on and drive him to the state house so that he, Miller, could register the car. DeMarino consented and after they got to the state house he left Miller and went home. The next day, June 20, 1947, Miller went to DeMarino’s house and, according to the latter, represented that it was necessary to execute a new bill of sale and swear to it in order to comply with the law of this state. Apparently DeMarino took Miller’s word for it that such was the law and executed another bill of sale before a notary public who read it aloud to DeMarino before he swore that it was true and signed it.
This bill of sale was introduced by defendant, as an exhibit and reads as follows:
“June 20, 1947
Sold to William Miller of Providence 1-1942-4 door sedan Pontiac — Motor #P8KA10508 Serial #P8KA1050834. Car sold as is. 00
1000 100 cash.
(signed) John De Marino
Witness to signature of John De Marino:
(signed) Charles L. Troup (notarial seal)
Notary Public” .
*374 DeMarino testified that he knew he was signing a second bill of sale to Miller but he did not satisfactorily explain why he did so if the sale was really to the plaintiff. The fact that he did not read or write does not sufficiently account for these seemingly contradictory acts. His conduct would seem to be accountable only on the theory that all along he thought Miller was the man who was really buying the car notwithstanding the fact that he received the purchase price by check from the plaintiff. He testified directly when pressed for an answer by plaintiff’s counsel that he really sold to the plaintiff although he had previously testified that he never delivered the car or the keys to him or even handed him the bill of sale or the registration transfer. Moreover his credibility and that of the plaintiff as to what actually took place at the hotel are clearly open to question.
When DeMarino was shown the transfer at the trial and was asked whether it was in that form when he signed it, he answered that it was except that the plaintiff’s name only was on it and not Miller’s. The transfer shows that it was executed on September 5, 1947 and not on June 19, 1947. This discrepancy is greatly in need of an explanation. The lack of such explanation is subject to.inferences by the jury. If the date' of September 5, 1947 was on the form when DeMarino signed it on June 19, 1947, what was the reason? None is given. If the registration form remained in his possession until it was surrendered to the registry of motor vehicles and if he actually had transferred it on June 19, 1947, why did he state therein that he had transferred his ownership on September 5, 1947? If the registration was actually in plaintiff’s possession, how did it come into the possession of the registry of motor vehicles on September 13, 1947? It may well be that this was all Miller’s handiwork, but whoever was responsible for it a serious question arises as to the good faith of the plaintiff as well as of Miller and DeMarino in the transaction of June 19, 1947.
*375 According to his own testimony, the plaintiff never took actual or even symbolical possession of the car from De-Marino but permitted Miller, a man he knew nothing about, to have the physical possession of it and the bill of sale from Atlas Motor Sales to DeMarino and to drive the car ostensibly to register it. But plaintiff admits that he did not sign an application for registration of the car in his own name; that he did not give Miller any money to pay the registratioh fee therefor; and that later on the same day, June 19, 1947, when Miller returned without the car he did not ask for the keys to the car nor where it was. All these unusual circumstances, in our opinion, raise a question of fact as to whether there was a bona fide transfer of title to him on June 19, 1947; and perhaps a question whether or not there was some connivance between plaintiff and Miller in the whole transaction.
There is more documentary evidence that tends to accentuate the possible inference of connivance as suggested above. When Miller left Providence after selling the car to the defendant the following letter which was introduced by the plaintiff, but at the request of the defendant, as an exhibit was received by the plaintiff in an envelope posted in Boston, Massachusetts, on June 22, 1947:
“Hymie:
The fellow who sold us the car fooled us, it was a taxi, but he fixed it up so you couldn’t tell it very well. What I want you to do is sue him and get your money back.
He signed a bill of sale to me and I sold the car, to Johny’s Auto Sales on North Main St.
He had no right to give me a bill of sale because you (by check) paid for the car a and he gave you a bill.
If he didn’t give me the bill I couldnt sell the car, on this basis you will get your money back. After you get your money back, then I’ll settle with him and straighten out with you. Give these facts to your lawyer and I’m sure he’ll know what to the do. Johnny
*376 Auto Sales has the bill that (Mr. De Marino) the seller gave to me. You’ll need Johnny as a witness I’ll see you in about two or three weeks as I have a good proposition which I’m working on. Take care of the things I left with you.
(signed) Miller
(over)
P.S.
I wouldn’t advise suing him for another week or so. Because, the court might settle the case by giving you the car back and some money. Johnny is fixing the door and some other little things on the car. So if you give Johnny the chance to fix the car we’ll get it back like new.”
Defendant testified that Miller drove the Pontiac into his, defendant’s, used car lot on June 20, 1947 and offered to sell it for $600. Defendant examined the car and the registration and found that it was registered in the name of William Miller and that Miller had in his possession the sworn bill of sale from DeMarino and also DeMarino’s bill of sale from Atlas Motor Sales. On the basis of those facts he testified that he felt it sufficiently appeared that Miller was the lawful owner of the car and he thereupon paid him $600 in cash.
In view of the peculiar circumstances surrounding plaintiff’s unusual reliance upon Miller, a complete stranger to him, most of which are not satisfactorily explained, and also in view of further unusual circumstances surrounding the transaction involving DeMarino, Miller and the plaintiff at the Maple Hotel, we are of the opinion that whether the evidence tended to prove that plaintiff was the bona fide transferee of the title to the sedan on June 19, 1947 was a,question for the jury. Were the case shorn of the strange circumstances above alluded to it might well be that, as the trial justice found, there would be nothing for the jury to determine; but, as it stands, the case, in our opinion, was not one for the court to decide as a matter of law. And.this is especially so where on a motion for a directed verdict all the evidence and the reasonable infer *377 enees therefrom must be viewed most favorably to the party against whom the motion is made.
Thomas J. Paolino, Benedetto A. Cerilli, for plaintiff.
Kirshenbaum Ac, Kirshenbaum, Knauer & Knauer, for defendant.
Assuming, however, without deciding that the title did pass to the plaintiff on June 19, 1947 we are of the further opinion that the evidence of his relations with Miller raises a question for the jury whether plaintiff should be estopped to set up his title against the defendant. On one view of the facts, plaintiff will suffer a loss of $1000, and on another view defendant will suffer a loss of $600. In either case it will be as a result of fraudulent conduct by Miller while having the possession of the Pontiac and muniments of title pertaining thereto. The jury could reasonably find that the plaintiff, by his conduct amounting to negligence if not more, made it possible for Miller to perpetrate such fraud. This court, in keeping with the general current of authority, has held: “A person is estopped to set up the truth in contradiction to his conduct, so as to make the truth an ■ instrument of fraud.” East Greenwich Institution for Savings v. Kenyon, 20 R. I. 110.
We think the facts of the case at bar while not identical are similar to those in Perry v. McGuckian, 45 R. I. 259, wherein the above principle was applied. In accordance with the language of the court in that case, whether or not the plaintiff here should be estopped from setting up his title on account of his conduct or dealings with Miller, considered in connection with the testimony of the defendant, was a matter of fact which should have been left to the jury. This is but an application of the familiar principle that where one of two persons must suffer a loss it ought to be borne by the one who caused it. Thornley Supply Co. v. Madigan, 51 R. I. 310. In the case at bar we think it is for the jury to say whether plaintiff caused the loss.
The defendant's exception is sustained, and the case is remitted to the superior court for a new trial.